IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF KANSAS

Curtis Dorn and Ann Dorn, )
)
                Plaintiffs, )
)
v. )    Case No. 09-1027-WEB
)
BMW of North America, LLC., )
)
                Defendant. )

MEMORANDUM AND ORDER

This case involves claims for property damage arising out of a fire which occurred in the plaintiff's garage. The fire originated in the plaintiff's BMW. Plaintiff filed this action alleging product liability with respect to manufacture and design, negligent manufacture and design, negligent failure to warn, and breach of express and implied warranties. Defendant BMW has filed a Motion to Exclude the Testimony of Plaintiff's Retained Expert (Doc. 56) and a Motion for Summary Judgment (Doc. 54).

I. Facts

Plaintiffs purchased a 2000 BMW 528i on May 19, 2000. In March, 2007, the BMW was still owned by the Dorns, and the vehicle's odometer reflected at least 53,300 miles of use. On March 27, 2007, plaintiff Curtis Dorn left work at approximately 5:30 PM and drove the BMW approximately one block to Panera Bread Company. When he exited the vehicle, he noticed the fan was still running after the engine had been turned off. He also noticed an odor of hot rubber coming from the vehicle. When he exited Panera, the fan had stopped running, but he could still smell burning rubber. Curtis Dorn arrived home at approximately 6:45 PM, he did not hear the fan running at that time, nor did he smell anything like burning rubber. Curtis Dorn parked the

1

BMW in the attached garage. At approximately 7:15 Ann Dorn arrived home and parked her Chrysler minivan in the garage, next to the BMW. She did not smell anything out of the ordinary. At approximately 8:00 PM Curtis Dorn went into the garage to place items into the BMW, and he again noticed a hot rubber smell. He opened the hood of the BMW. He did not observe the fan running and could not locate the source of the smell. At approximately 9:40 PM, Curtis Dorn was alerted by his wife that there was a fire in the garage. When Curtis Dorn entered the garage, the garage was full of smoke. He grabbed a fire extinguisher and attempted to put out the fire he could see behind the grill of the BMW. He exited the garage within a short time, unable to extinguish the fire. The fire department arrived, and extinguished the fire. The fire destroyed the BMW, the Chrysler, and there was structural damage to the garage and the house.

From the time of purchase of the BMW, to the time of the fire, the vehicle had been serviced by Joe Self BMW. On at least seven occasions, the last one six weeks prior to the fire, Joe Self performed work in the engine compartment of the BMW. On December 5, 2002, while operated by the plaintiff, the BMW hit a curb. As a result, the electrical rpm rate sensor, the wheel speed sensor, and two wheels and tires had to be replaced.

The plaintiffs hired Tim Yandell, a fire investigator, as their expert witness. Yandell identified the area of origin for the fire as "near" the BMW's headlight assembly, or within the general engine compartment of the BMW. Yandell was not able to identify the exact point of origin due to the extent of the fire damage.

Defendants designated Dennis Himmler as an expert witness. Himmler is an electrical engineer. Himmler was not able to identify the cause of the fire.

II. Jurisdiction

Jurisdiction is properly invoked pursuant to 28 U.S.C. § 1332.

III. Standard

Summary judgment is appropriate when "the pleading, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. Wright v. Abbott Labs., Inc., 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. Faustin v. City & County of Denver, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. Allen v. Muskogee, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. Id.

The moving party bears the burden of showing the absence of any genuine issue of material fact. Celotex Corp. V. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may satisfy its burden by "pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. Bacchus Indus., Inc. v. Arvin Indus., Inc., 939

F.2d 887, 891 (10th Cir. 1991).

IV. Motions

There are two motions before the court. Defendant has filed a motion to exclude the testimony of the plaintiff's retained expert, and a motion for summary judgment. Defendant argues Yandell is not qualified to provide an opinion regarding the mechanism of failure or the cause of the fire. Defendant also argues Yandell did not follow the methodology set forth in the fire guideline manual. Defendant argues that summary judgment is appropriate as the plaintiffs cannot prove the precise point of the fire's origin, the specific cause of the fire, or that any component of the 528i was defective at the time it was sold by defendant or at the time of the fire.

V. Discussion

1. Motion to Exclude Expert Witness

Defendant has filed a motion to exclude the testimony and opinions of the plaintiff's expert, Tim Yandell. Defendant argues that Mr. Yandell is not an electrical engineer, and he does not have any formal education in the field of electrical engineering. Defendant argues Yandell is not qualified to provide an opinion regarding causation, Yandell did not properly employ the recognized methodology fire cause and origin investigation, and his evidence is unsupported and speculative.

Yandell is a Certified Fire Investigator, a Nationally Certified Fire and Explosion Investigator in Oklahoma, and a Nationally Certified Vehicle Fire Investigator. Yandell has investigated or assisted in approximately 1000 origin and cause investigations, including structure and vehicles. Yandell has qualified in court as an expert witness in one Federal Court

case, and six State Court cases. Yandell is also a National Fire Instructor for Public Agency Training Council, where he teaches Fire Investigation Based on NFPA 921 and NFPA 1033, Hands on Vehicle Fire / Arson Investigation and Phase 2 Hands on Fire / Arson Investigation Based on NFPA 921 and NFPA 1033. Yandell has also authored and co-authored three training manuals on fire investigation.

a. Yandell's Report

Yandell's report states that the examination of the fire scene and vehicle was conducted using a Scientific Methodology, "The Basic Method of Fire Investigation," and a "Systematic Approach." Yandell noted the weather conditions at the time of the fire and noted the fire alarm time and arrival time of the fire department based on the fire department report. Yandell used the fire department report, the fire investigators report, the window documentation, the breaker panel documentation, the utility documentation, the vehicle field examination notes, the vehicle history report, the inspection attendance, seven diagrams with diagram log and ignition source legend, and photographs in his report and his conclusions.

Yandell concluded that:

"Based on a degree of scientific certainty, after the examination of the structure and vehicles, it was determined the area of fire origin was near the headlamp assembly of the 2000 BMW VIN: WBADM5342YBY19087 on the passenger side of the engine compartment, which was located near the south wall of the attached garage. After the examination of the structure and vehicles, examination of the structure and vehicles by an electrical engineer, examination of exterior and interior *Movement Fire Patterns* and *Intensity Fire Patterns*, interviewing witnesses and interviewing the insured, it is this investigators opinion the igniting source for the fire was energized electrical wiring, wiring connections or components. The materials first ignited were normal combustibles. The act or omission that brought the ignition source and the materials first ignited together was a problem or failure in the energized electrical wiring, wiring connections or components associated with the engine compartment of the 2000 BMW."

In his deposition testimony, Yandell testified that as an origin and cause investigator he did not identify the mechanism of failure, (Yandell Depo., p. 20-21), and that he was not qualified to make a determination of the potential mechanism of failure in the BMW. (Yandell Depo., p. 44). Yandell stated the origin of the fire was the BMW, but he was unable to determine the specific cause of the fire, only that in his opinion, the cause of the fire is directly related to the energized electrical wiring, wiring connections or components associated with the engine compartment of the BMW vehicle. (Yandell Depo., p. 105).

b. Discussion

Federal Rule of Evidence 702 provides that "[I]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." In <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court set forth a two part test for admission of expert testimony under Rule 702. First, evidence must be reliable, and second, it must be helpful to the jury. <u>Id.</u> at 590-91.

To determine reliability, the court may consider (1) whether the expert's theory or technique can be and has been tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) the known or potential rate of error of the technique or theory, and (4) the general acceptance of the theory or technique. <u>Id.</u> at 592-94. A party offering expert testimony "need not prove that the expert is undisputably correct or that the expert's theory is

generally accepted in the scientific community. Instead, the party must show the method used by the expert is scientifically sound and that the opinion is based on facts which sufficiently satisfy the Rule 702 reliability requirement. Truck Ins. Exch. v. Magnetek, Inc., 360 F.3d 1206, 1210 (10th Cir. 2004). Expert testimony must "assist the trier of fact to understand or to determine a fact issue in the case." Thompson v. State Farm Fire & Cas. Co., 34 F.3d 932, 941 (10th Cir. 1994).

To qualify as an expert, the witness must possess "such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth." Lifewise Mast Founding v. Telebank, 374 F.3d 917, 928 (10th Cir. 1998). "A trial court must look at the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact." Bitler v. A.O. Smith Corp., 391 F.3d 1114, 1121 (10th Cir. 2004).

Defendant argues that Yandell is not qualified to provide an opinion regarding causation. Yandell testified that he investigated the fire pursuant to the methodology set forth in NFPA 921. NFPA 921 represents the national standard for the methodology for investigation by fire science experts. See Pekarek v. Sunbeam Products, Inc., 672 F.Supp.2d 1161, 1175 (D.Kan. 2008), citing Workman v. AB Electrolux Corp., 2005 WL 1896246, *10 (D.Kan. Aug. 8, 2005). The scientific method for fire investigation sets forth a seven step approach: (1) recognize the need (identify the problem), (2) define the problem, (3) collect data, (4) analyze the data, (5) develop a hypothesis, (6) test the hypothesis, and (7) select final hypothesis. (NFPA 921 Guide for Fire and Explosion Investigations, Def. Exh. 6, Doc. 57-7). Yandell testified that he followed the

7

protocol set forth in the manual. Yandell testified that he was able to ascertain that the fire started in the engine components of the BMW, but was unable to determine the specific cause of the fire, only that in his opinion, the cause of the fire is directly related to the energized electrical wiring, wiring connections or components associated with the engine compartment of the BMW vehicle.

Plaintiff has not set forth any evidence that Yandell has any expertise which would allow him to conclude that the cause of the fire was the energized electrical wiring, wiring connections or components associated with the engine compartment of the BMW. Yandell states that the fire is "directly related" to the engine compartment, however, the court cannot determine how he developed this conclusion. Yandell is not an electrical engineer, and does not claim to have any knowledge or expertise in this area. In fact, Yandell testified that he is not qualified to testify as to the cause of the fire. In his deposition, he stated that he did not make a finding or determination of a mechanism of failure that caused the fire, (Yandell Depo, p. 21), and he stated the auxiliary cooling fan and or its wiring or connections or components associated could be a possible cause of the fire, but he cannot state that with any reasonable degree of scientific certainty. (Yandell Depo., p. 91) Yandell was unable to determine the distance of the fire origination from the head lamp assembly, only that it occurred near the head lamp, (Yandell Depo., p. 114-15). The deposition transcript shows the following:

> Q: Why are you unable to form an opinion to a reasonable degree of scientific certainty as to the specific cause of the fire that you believe started in the BMW?
> A: Because this is above my field of expertise.
> Q: What is above your field of expertise?
> A: Identifying a mechanism of failure.

In his report, he opines that "the ignition source for the fire was energized electrical wiring,

8

wiring connections or components. The materials first ignited were normal combustibles. The act or omission that brought the ignition source and the materials first ignited together was a problem or failure in the energized electrical wiring, wiring connections or components associated with the engine compartment of the 2000 BMW." This conclusion is not consistent with Yandell's statements in the deposition that he is not qualified to identify the cause of the fire because it is beyond his area of expertise. Clearly, Yandell is certified and qualified to testify as to the origin of the fire, as that is his area of expertise. However, Yandell will not be allowed to testify as to the cause of the fire.

Defendant argues that Yandell is not qualified as an expert because he did not follow the correct methodology set forth in fire investigation. Defendant argues that Yandell did not test the components nor did Yandell properly collect the evidence. A review of NFPA 921 (Def. Exh. 6, Doc. 57-7), shows that Yandell does not have to test the components himself to follow the methodology set forth in the guideline. "Testing of the hypothesis is done by the principle of deductive reasoning, in which the investigator compares his or her hypothesis to all the known facts as well as the body of scientific knowledge associated with the phenomenon relevant to the specific incident. A hypothesis can be tested either physically by conducting experiments or analytically by applying scientific principles in 'thought experiment.'" (NFPA 921, 4.3.6). Further, as pointed out in Workman v. AB Electrolux Corp., 2005 WL 1896246 (D.Kan. August 8, 2005), Daubert only requires that the methodology be established, scientifically sound, and subject to peer review, not subject to actual testing by the expert. Id. at *10. Defendant also argues that Yandell did not follow the methodology as the fire scene was altered and he was not able to investigate other causes of the fire in the same condition or place as the night of the fire.

9

This argument has little if any weight, as it is common sense that items that are a fire hazard, such as the vehicles, a lawn mower with gasoline, and gasoline containers, would be removed from the fire scene. Furthermore, Yandell was not available to investigate until after the fire had been extinguished, and after the Plaintiff's retained an attorney. Finally, most of the collection of physical evidence was collected by the fire department or other agencies. Defendant does not argue that the collection of evidence was done improperly, only that Yandell failed to properly collect evidence. Based on the time line of events in this case, this argument is meritless.

Defendant argues that Yandell does not possess formal education in the field of electrical engineering. Although Yandell is not an electrical engineer, he is a certified fire investigator, with years of experience investigating fires. One aspect the court should consider in determining whether to allow an expert is whether the expert's testimony will be helpful to a jury. Clearly, based on Yandell's investigation, experience, and knowledge of fires, his testimony will be helpful to a jury. Yandell is qualified as an expert in fire investigation, including cause and origin investigation such as the one conducted in this case. Yandell employed the standard methodology for fire investigation to reach his conclusions. Yandell's testimony will be limited to the fire investigation, methodology, and the origin of the fire. Accordingly, defendant's motion to exclude Yandell's testimony is denied in part and granted in part.

2. Summary Judgment

Under Kansas law, product liability claims are governed by the Kansas Products Liability Act (KPLA), codified at K.S.A. § 60-3301 et seq. The purpose of the KPLA is to consolidate all product liability actions into one theory of legal liability. Patton v. Hutchinson Wil-Rich Mfg. Co., 253 Kan. 741, 756, 861 P.2d 1299 (1993).

To present a prima facie claim of strict liability in the manufacture or sale of a product, the plaintiff must produce proof of three elements: 1) the injury resulted from a condition of the product, 2) the condition was an unreasonably dangerous one; and 3) the condition existed at the time it left the defendant's control. Jenkins v. Amchem Products, Inc., 256 Kan. 602, 630, 886 P.2d 869 (1994), *cert. denied*, 516 U.S. 820, 116 S.Ct. 80, 133 L.Ed.2d 38 (1995). A product must be both defective and unreasonably dangerous. Id. A defective condition is a "condition which is unreasonably dangerous to the ordinary user." Id. at 635. Unreasonably dangerous is defined as "dangerous when used in the way it is ordinarily used considering the product's characteristics and common usage, and is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased it, with the ordinary knowledge common to the community as to its characteristics." Id. Kansas recognizes three possible types of defects in strict liability cases, design defects, manufacturing defects, and warning defects. Id. at 630.

A product liability claim may be proven by either direct or circumstantial evidence. Mays v. Ciba-Geigy Corp., 233 Kan. 38, 54, 661 P.2d 348 (1983). Circumstantial evidence "must tend to negate other reasonable causes, or there must be an expert opinion that the product was defective." Id. Kansas substantive law provides that every products liability action must be based on a defective condition in the product, regardless of the theory of recovery. Lane v. Redman Mobile Homes, Inc., 5 Kan.App.2d 729, 734, 624 P.2d 984 (1981), *rev denied* 229 Kan. 670 (1981). "In the absence of direct proof of a specific defect, it is sufficient if a plaintiff negates other possible causes of failure of the product, not attributable to the defendant, and thus raises a reasonable inference that the defendant ... is responsible for the defect." Mays, 223 Kan.

at 50.

The plaintiff must prove causation, in that the defective product is the actual and proximate cause of the injury. Wilcheck v. Doonan Truck & Equipment, Inc., 220 Kan. 230, CITE, 552 P.2d 938 (1976). However, if the manufacturer warrants that a product will perform in a certain manner and the product fails, defects may be immaterial. Cantrell v. Amarillo Hardware Co., 226 Kan. 681, 685, 602 P.2d 1326 (1979), citing Huebert v. Federal Pacific Electric Co., Inc., 208 Kan. 720, 725, 494 P.2d 1210 (1972).

In the case at hand, there is no expert testimony before the court that the product, either the car or any component of the car, was defective. Therefore circumstantial evidence must negate other reasonable causes. There is expert testimony that the origin of the fire was in the engine area of the car. Defendant argues that since the plaintiffs do not point to a specific defect, they cannot prevail on a defective product claim. Plaintiffs argue that they do not have to assert a specific defect claim, but only a nonspecific manufacturing defect claim.

In support of their position, plaintiffs cite to Workman v. AB Electrolux Corp., 2005 WL 1896246 (D.Kan. 2005). In Workman, a freezer purchased 15 months earlier started a fire in the plaintiff's garage. The plaintiff's expert identified a short circuit in the freezer as the cause of the fire, but was unable to identify the specific defect that caused the short-circuit. Id. at 13. The court found that although the specific defect could not be identified, there was "sufficient evidence to negate other reasonable causes of the fire and support an inference of probability that the Freezer was defective." Id. at 15.

Plaintiffs also rely on McCoy v. Whirlpool Corp., 258 Fed.Appx. 189 (10th Cir. 2007). In McCoy, the court found that although there was disputed expert testimony, which was a

question for the jury, expert testimony established that a fire originated in the dishwasher, most likely started by a manufacturing defect in the electrical connections. Id. at 198-99. The court ruled that Kansas law does not require that the manufacturing defect be specified any more than a defective connection in the electrical circuitry of the door latch switch assembly. Id. at 199.

Finally, plaintiff cites to a case decided in this court, Pekarek v. Sunbeam Products, Inc., 672 F.Supp.2d 1161 (2008). In Pekarek, the plaintiffs alleged that a fire that started in a bedroom of their house was the result of a defective design or manufacture of an electric blanket. The court denied the defendant's request for summary judgment, finding that there was circumstantial evidence from which a jury could find that a manufacturing, design, or warning defect in the blanket caused the fire. Id. at 1190. The facts in Pekarek show that the blanket was the only heat-producing item in the immediate vicinity of the point of origin, the blanket was almost new, and it was always left in the "on" position. The court ruled that a jury could find there were no other potential fire sources, and there was evidence that PTC elements of the type used in the blanket have some history of failing and causing fires. Id. at 1190-91.

In Samarah v. Danek Med., Inc., 70 F.Supp.2d 1196 (D.Kan. 1999), the court granted summary judgment for the defendant, finding that "plaintiff has failed to identify the existence of, much less produce any evidence regarding, a specific defect in the TSRH instrumentation system at issue in this case." Id. at 1203. The Samarah court went on to state "to the extent that plaintiff has failed to offer specific facts to indicate exactly how or why defendants' product is allegedly defective, plaintiff essentially requests the court to infer the existence of a defect in the defendants' product solely from the fact that plaintiff sustained an injury allegedly attributable to the TSRH device. Under Kansas law, however, such proof is inadequate to establish a viable

products liability claim..... Because plaintiff is required to establish that a defect existed in the specific product from which his products liability claim arises, plaintiff's evidence fails in this respect as well." Id. The Samarah court relied on Jenkins v. Amchem Products, Inc., 256 Kan. 602, 630, 886 P.2d 869 (1994), *cert. denied*, 516 U.S. 820, 116 S.Ct. 80, 133 L.Ed.2d 38 (1995). In Jenkins, the Kansas Supreme Court found that plaintiff was required to identify a defect in a product to support a strict liability claim. The Court found that inferring a defect from the fact of the injury is not suitable. Id. at 635. The Court stated, "some specific defect must be established to prove a strict liability claim." Id. The court ruled that since the plaintiff failed to identify what aspect of defendant's product was defectively designed, the strict liability claim failed. Id. at 637.

Defendant relies on Farmers Ins. Co., Inc. v. Smith, 219 Kan. 680, 549 P.2d 1026 (1976). In Farmers, a mobile home was ordered from the defendant manufacturer, transported about 300 miles, and set up for occupancy by defendant. A little over three months after moving into the mobile home, the home caught fire. The Court found that there was a reasonable inference that the source of the fire was a loose electrical connection at or near the circuit breaker box, however, the court affirmed judgment in favor of the defendants, because there was no evidence that the electrical connection problem that caused the fire existed at the time it left the possession or control of the defendants. Id. at 691. The Court noted that in the 64 days between the delivery of the mobile home, the family occupied the mobile home, and the area was accessible to the family and a third party, and in fact was accessed by a third party. Id.

The Court in Farmers relied on Querry v. Montgomery Ward & Co., Inc., 217 Kan. 104, 535 P.2d 928 (1975). The Querry Court affirmed the trial court, finding that when the cause of

the fire is not known, it is inappropriate to require the jury to speculate as to what caused the fire, and that the cause of the fire could not be established by an inference. Id. at 108.

"Factors to be considered in determining whether a product defect may be inferred from circumstantial evidence include expert testimony as to causes, the occurrence of the accident in a short time after the sale of the product, the occurrence of the same accident in similar products, the elimination of other causes of the accident, and testimony that the accident was the type that does not occur without a defect. When a product does not function as designed, and there is no evidence suggesting that anyone tampered with it since it left the manufacturer, there is circumstantial proof of defect." 2 Frumer & Friedman, Products Liability [11.02] (Matthew Bender, Rev. Ed.). "Age and use of the product during the time between its purchase and malfunction may defeat the circumstantial weight of malfunction as proof of the original defect." Id.

The evidence before the court is that there is no identified cause of the fire. Plaintiff's expert, Yandell, is precluded from testifying as to the cause of the fire, as he admitted that he is not qualified in the area of mechanical engineering. However, Yandell identified the origin of the fire as the engine area of the BMW. The plaintiff reported smelling "burning odor" in the garage shortly before the fire, and stated that the fan continued to run after the car was turned off. After the fire started, plaintiff entered the garage and observed flames coming from the engine of the car. Yandell and other fire investigators ruled out any other sources of the fire, including electrical wiring in the garage, gas containers, and lawn mowers. A jury could find that the fire started in the engine component of the BMW and that there were no other sources of fire in the garage. A jury could find that although there is not a specific defect identified, that

15

there were no other reasonable causes identified, and there is sufficient evidence to support an inference of probability that the BMW or a component part of the BMW was defective.

The next factor is whether the defect existed at the time the BMW left the control of the manufacture. Defendant argues that the plaintiff cannot show the defect existed at the time the BMW left the control of the manufacturer.

In <u>Dieker v. Case Corp.</u>, 276 Kan. 141, 73 P.3d 133 (2003), a combine started on fire, and the owner filed suit against the manufacturer. The defendant argued there was insufficient evidence that the alleged defect existed when the combine left its custody and control. The court found that neither the plaintiff nor any third party had performed any maintenance or other work in the area where the fire started. <u>Id.</u> at 162-63. Also important, the court noted that Dieker owned the combine for a month before the fire, and had only used the combine for 120 hours. <u>Id.</u> In the case at hand, the plaintiffs owned the vehicle for over seven years before the fire. Furthermore, there is testimony that Joe Self BMW had performed work in the engine near the area of the fire 6 times in the seven year period, the most recent being 6 weeks prior to the fire.

In <u>Lane v. Redman Mobile Homes, Inc.</u>, 5 Kan.App.2d 729, 624 P.2d 984 (1981), the trial court granted a directed verdict for the defendants at the close of the plaintiff's evidence. The evidence showed the plaintiffs purchased the mobile home in July of 1973, and in December 1975 the home was destroyed by a fire. The parties agreed that the garbage disposal switch and plug outlet near the kitchen sick was the location of the electrical fire. Defendants argued that there was no evidence of defect that served as the source of the fire, and that plaintiffs could not establish the defect existed at the time the mobile home left the control of the defendants. Also significant was that no one had ever gained access to the receptacle after it left the

16

manufacturer's control, and the expert testified that to access the area of the fire, part of the wall would have to be dismantled. The expert also testified that the origin of the fire was a jumble of wires, the wires were improperly secured in violation of the manufacturer code and electrical code, and that the wires were subject to arcing. The Court of Appeals reversed the trial court, finding sufficient evidence of a defect, and ruled that there was sufficient evidence for the matter to be presented to a jury. Id. at 738.

"Proving the existence of a manufacturing defect while under the control of the manufacturer is particularly difficult where the product has been used for a substantial period of time. Generally, the older the product is, the more difficult it is to prove that the defect existed while under the control of manufacturer." 2 Frumer & Friedman, Products Liability [11.02] (Matthew Bender, Rev. Ed.). In cases that have found that circumstantial evidence may show the defect existed at the time the product left the manufacturer's control, courts have considered the time the product was out of the manufacturer's control, access to the product or the defect by the owner, access to the product or the defect by third parties, whether the product was ever subjected to any unusual or unintended forces, and the opinions of experts. In American Family Insurance v. Sears, Roebuck & Co., 998 F.Supp. 1162 (D.Kan. 1998), the court found that circumstantial evidence may prove the plaintiff's case, as the appliance only traveled one mile from the store to the business, there was no unusual occurrence, and the area where the fire occurred could not be reached without opening the unit. Id. at 1165. However, in Farmers, 219 Kan. 680 (1976), the court recognized the mobile home had traveled 300 miles from the store to the owner's property, the owners lived in the mobile home, and an electrician had accessed the breaker box. Id. at 690-91. The court ruled that the plaintiffs did not show the defect existed at

17

the time it left the manufacturer's control. "There is nothing in evidence to show that the loose electrical connection, whatever and wherever it might have been did not occur during the 64 days prior to the fire the Sweaney family occupied the mobile home as their residence." Id. at 691. In Dieker, the court found there was no evidence that anyone had performed any maintenance or other work in the area of the valve body, where the fire occurred, the combine only had 120 hours of work, and the expert's testimony established that there was a fluid leak that could be related to the fire. 276 Kan. at 163.

The court finds Jacobson v. Ford Motor Co., 199 Kan. 64, 427 P.2d 621 (1967) instructive to the issue at hand. In Jacobson, the owner of an automobile filed suit for personal injuries against the manufacturer after the automobile collided with a crossing signal due to alleged negligent construction of the brake pedal assembly. The jury found no negligence based on an alleged defective brake pedal assembly. The Kansas Supreme Court affirmed the jury's verdict. The Court noted that at the time of the accident, the car was one year and seven months old, it had been driven 31,000 miles, and about a month prior to the accident, it was involved in an accident in which it hit a retaining wall. Id. at 67. The Court reviewed the evidence presented to the jury and affirmed the verdict.

In the case at hand, the BMW was 7 years old at the time of the fire, and there were over 53,000 miles on the odometer. The car was serviced by Joe Self BMW 17 times in seven years. Joe Self accessed the engine six times, the most recent approximately six weeks prior to the fire. The car was also involved in an "accident" approximately five years prior, wherein the wheel hit a curb and damaged the vehicle, including two tires and the engine component of the car. Unlike the plaintiffs in Dieker and Lane, the plaintiffs in the case at hand owned the vehicle for a long

18

period of time and a third party had access to the engine compartment on numerous occasions. The court finds that this case is more like <u>Farmers</u>, in that there is no evidence that the problem that caused the fire existed at the time it left the possession or control of the defendants. In <u>Farmers</u>, the court found that a time of 64 days, access by a third party, and no showing that the defect existed at the time the property left the manufacturer's control was enough. This case is also similar to <u>Jacobson</u>, in that the car was out of the manufacturer's control for a long period of time. The BMW had more miles than the car in <u>Jacobson</u>, and the BMW had also had the engine component of the vehicle accessed on numerous occasions. The accident, although it occurred five years prior, also affected the area of the engine where the fire occurred.

Although plaintiffs have shown the origin of the fire was in the BMW, they have failed to demonstrate a factual basis to support a reasonable inference that the cause of the fire existed when the BMW left the possession or control of the defendant seven years earlier. The plaintiff's claim for product liability therefore fails as a matter of law.

Under Kansas law, to succeed on a claim of negligence or breach of warranty, the plaintiff must first establish the prima facie case for product liability. <u>Lane v. Redman Mobile Homes, Inc.</u>, 5 Kan.App.2d at 733-34. Kansas law also provides that every products liability action must be based on a defective condition of a product, regardless of the theory of recovery. See <u>Id.</u> As stated earlier, the plaintiffs failed to present sufficient evidence that there was defect at the time the car left the control of the manufacturer, BMW. Therefore, plaintiffs cannot recover under any product liability theory. Defendant's motion for summary judgment is granted.

VI. <u>Conclusion</u>

IT IS THEREFORE ORDERED that defendant's Motion to Exclude Expert Witness (Doc. 56) is granted in part and denied in part.

IT IS ORDERED that defendant's Motion for Summary Judgment (Doc. 54) is granted.

IT IS SO ORDERED this 30th day of September, 2010 in Wichita Kansas.

   s/ Wesley E. Brown
Wesley E. Brown
United States District Court Judge